Robert Leroy **LEONARD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15844.

United States Court of Appeals
Fifth Circuit.

April 6, 1956.

Athur T. Boone, Jacksonville, Fla., for appellant.

Edith House, Asst. U. S. Atty., E. Coleman Madsen, Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment and sentence based on a plea of guilty to an indictment charging failure to submit to induction into the armed forces. It differs from the usual run of cases in which such refusal has followed a normal processing of a registrant by the local draft board in which the registrant was denied a classification or exemption claimed.

Here the appellant failed to keep proper contact with his draft board, and al-

though he claims he became entitled to exemption as a ministerial student he concedes that he did not claim such exemption or reclassification in a timely notice to his draft board. By reason of this failure, and a change of legal residence, he received a notice to report for induction under a classification of I–A. He reported for induction but refused to take the prescribed oath. He then went in person, and voluntarily, to the office of the United States Attorney to state what he had done. He then returned to his divinity school until he was indicted nearly a year later. He was not taken into custody, but was notified to appear in court on October 14, 1955 for arraignment, which he did.

The record discloses that upon the opening of court the trial judge announced that appellant had a right to have counsel assigned if he desired it, and that the right to counsel could be waived only if the accused understood his right to have counsel and also understood the consequences of any plea he might be called upon to make. In the presence of the court thereafter the accused was asked by the United States Attorney whether he had an attorney to represent him, and upon giving a negative answer he was then asked whether he wanted the court to appoint an attorney to represent him. He replied "No, sir." Upon a recitation of the facts as to his failure to notify his draft board of his status as a ministerial student the court inquired as to his church membership and the court and accused both discussed matters relating to the matter of exemption as a conscientious objector. The defendant showed a lack of familiarity with both the ministerial student and conscientious objector status,[1] but he made two things clear. The first of these was that he was in a status (ministerial student) which, if he had notified the correct draft board, would have entitled him to exemption. The second was that he was ready (apparently because he recognized his fault in not informing the draft board of such status, and because of a claim of con-

---

1. Exemption for ministerial students is provided for in § 456(g), 50 U.S.C.A.Appendix, as follows:

Title 50, Appendix, § 456(g):

"Deferments and exemptions from training and service * * *

"(g) Regular or duly ordained ministers of religion, as defined in this title (sections 451–454 and 455–471 of this Appendix), and students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been pre-enrolled, shall be exempt from training and service (but not from registration) under this title (said sections)."

The provisions relative to special non-combatant service within the military forces and substitute civilian work without the military service for conscientious objectors are found in § 456(j) as follows:

Title 50, Appendix, § 456(j):

"(j) Nothing contained in this title (sections 451–454 and 455–471 of this Appendix) shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title (said sections), be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) (section 454(b) of this Appendix) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate * * *."

science) to perform the alternative civilian duty that is provided in the case of non-inducted conscientious objectors.

We do not suggest that a registrant under the Selective Service Act can with impunity ignore the necessary requirements of the draft boards, but in considering the question as to whether an accused should be permitted to withdraw a plea of guilty to a felony and submit his defense in a trial by a jury, these recited facts are of great importance.

At the conclusion of the statement by the United States Attorney and the explanation by the accused, the trial court adjudged him guilty and sentenced him to serve a term of six months in the custody of the Attorney General.

■ Upon his own volition the court then set a further hearing in the matter four days later, on October 18, at which the accused stated he had not intended to plead guilty. The burden of his plea on the hearing was that he thought the court could send him for duty as a conscientious objector and that he did not know he was pleading guilty to a felony under which the only action open to the court was the imposition of fine or imprisonment. Although it is clear that the trial judge sought to be completely fair in his treatment of the accused, we conclude that the rule that one should not be held to a plea of guilty if this would result in manifest injustice [2], requires a reversal of the judgment of conviction in this case.

The entire proceeding here was unusual in that the accused was permitted to leave the induction center after refusal to take the oath; that he went voluntarily to the United States Attorney's office and reported what he had done; he went back to divinity school and pursued his course of study until, nearly a year later, he was indicted and received a letter notifying him to appear for arraignment. He was never in custody and so far as the record indicates, there is nothing to rebut his statement that he thought the court on his plea of guilty could handle his case administratively instead of being required to find him guilty of a felony. The trial court commenced the second hearing by an inquiry as to whether Leonard had truly intended to plead guilty. It appears later to have placed its denial of the motion to set aside the plea on the basis that it saw nothing that would indicate that Leonard had any valid defense if he went to trial.

■■ The right to trial by jury being one of the most valuable and most highly cherished rights guaranteed by the Constitution, the courts have been understandably slow in holding an accused to an election to waive this right and enter a plea of guilty. There is, of course, an important place in the administration of criminal justice for the guilty plea. There are advantages both to society and to the accused from the willingness of trial courts to accept pleas of guilty when voluntarily and properly made. The courts have held, however, that to be accepted they must be understandingly made. United States v. Davis [3], Bergen v. United States [4].

■■ In the Davis case the accused had counsel representing him, but he charged that counsel had misled him as to the nature of the offense. In the Bergen case the accused had no counsel but asserted that he was familiar with the charge against him and had examined the indictment and that he waived having it read to him; he did, however, file a written statement with the court seeking to exculpate himself from some of the allegations. The court found him

---

2. Rule 32(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides:
   "(d) Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct

manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

3. 7 Cir., 212 F.2d 264.

4. 8 Cir., 145 F.2d 181.

guilty on his plea without reading the statement and on a subsequent motion refused to set this conviction aside. It was shown that in the meantime several co-defendants were acquitted when their cases were submitted to the jury. Furthermore, the accused, Bergen, was shown to be a man of good intelligence, as is the appellant here. Nevertheless the court there said:

"An intelligent and full understanding by the accused of the charge against him is a first requirement of due process. Ammons v. King, 8 Cir., 133 F.2d 270, 272; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859. On a motion by an accused without counsel for the withdrawal of a plea of guilty on the ground of want of comprehension of the charge, the rights of the accused and the duties upon the trial court are not unlike their respective rights and duties when the question is whether an accused has competently waived his right to the assistance of counsel. 'The constitutional right of an accused to be represented by counsel invokes, of itself, a protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.' Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357. So, while the accused in the present case had the right, without the advice of counsel, to enter a plea of guilty to the charge against him, it rested upon the trial court, when the application for withdrawal of the plea was seasonably made, to determine whether, in the light of all pertinent evidence, the plea of guilty had been made with intelligence and comprehension. Circumstances important for consideration are the nature of the charge against the accused, his apparent intelligence and ability to fully comprehend the charges against him, the gravity of the offense charged, the timeliness of the motion to withdraw the plea, and the fact that the accused before entering his plea did not have the advice of counsel." Bergen v. United States, 145 F.2d 181, 187.

Nothing held by us in Mitchell v. United States [5] or Powers v. United States,[6] conflicts with the principles enunciated in the cases cited. The record before us discloses no indication that the appellant's asserted lack of understanding of the motion or gravity of his act was false. The fact that appellant did not show that he had a defense to the charge or the fact that he might, or probably would, be found guilty by a jury is not significant here. We are concerned only with his right to have a jury trial. The fact that appellant claims he did not have an intelligent understanding of the nature of the proceedings on arraignment; that he did not intend to plead guilty to a felony; that he understood the court could act administratively to assign him to conscientious objector service; that he had no lawyer (even though this was his own choice) and the fact that the motion was made immediately following the entry of the plea and sentence, brings this case within the exception to the rule which requires the court to permit the withdrawal of a plea of guilty to avoid manifest injustice. The order denying the appellant's motion to withdraw his plea of guilty and the judgment and conviction and sentence are reversed and set aside in order to permit appellant to plead anew to the indictment.

Reversed and remanded.

5. 5 Cir., 179 F.2d 305.

6. 5 Cir., 188 F.2d 355.