### LOWREY v. HIATT, Warden.
### No. 203.

District Court, M. D. Pennsylvania.
Sept. 9, 1947.

Petitioner, pro se.

Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., for respondent.

FOLLMER, District Judge.

The petitioner, James Edgar Lowrey, together with his brother, Thomas, was originally arraigned on October 15, 1946, at Wheeling, West Virginia. One counsel was appointed for both. Indictment was waived. The record shows that such waiver was intelligently made.[1] Petitioner en-

---

[1] At hearing on October 15, 1946, at Wheeling, West Virginia:

"The Court: Do you want the benefit of counsel before you speak to this or waive the indictment, or what do you want to do?

"James Lowrey: Well, I'm going to plead guilty, Your Honor.

"Thomas Lowrey: I'm going to plead not guilty.

"The Court: The only question now is whether you want to waive the formal indictment by a grand jury and agree to proceeding on information. Is that your idea? You have a right to demand indictment by grand jury if you want it, but if you want to waive it, you are just in the same position as if you were indicted by the grand jury if you proceed on information, whether you want a trial or do not want a trial.

"James Lowrey: Your Honor, I would like to say something if you would grant me permission. I stole the car, my brother didn't. I stole the car and I picked him up later on and he didn't know the car was stolen.

"The Court: That is not the question now, whether you took the car or not. The question is, whether you are willing to waive the formality of indictment and proceed on information.

"James Lowrey: Well, I will plead guilty.

"Mr. Brooks: If Your Honor please, in view of this one man's statement that he wanted to plead not guilty, I think it probably would be advisable to have counsel to talk to both of them.

"The Court: Yes. Mr. Howard Matthews, will you talk to these boys, please? They seem to need some mature advice.

"Thereupon, Mr. Matthews and the two defendants retired from the court room, returning after a while and the following proceedings were had:

"Mr. Matthews: Your Honor please, I have talked to these two young men and have advised them of what it means to waive a grand jury. I think they thoroughly understand it, and they have both agreed to do that, to proceed from there on on this information. I understand James Edgar desires to plead. Thomas here has already pleaded not guilty, as I understand it, to this information.

"The Court: Now, is it your desire, boys, as said by Mr. Matthews, your appointed counsel, to waive the indictment and proceed on information? Is that right, Thomas?

"Thomas Lowrey: Yes, sir.

"The Court: James?

"James Lowrey: Yes, sir."

tered a plea of "guilty" and Thomas a plea of "not guilty." In view of Thomas' plea of "not guilty," the case was continued. Further proceedings at Wheeling were then had on November 15, 1946, as to the petitioner; the proceedings as to Thomas having in the meantime been dismissed since petitioner had assumed the entire blame. He, at this hearing, waived counsel and requested leave to withdraw his plea of "guilty" and plead "not guilty."[2]

The case was then called at Elkins, West Virginia, on November 19, 1946, at which time counsel was appointed for him,[3] who

[2] The following took place at the November 15, 1946, hearing at Wheeling,

"The Defendant: Yes, sir, Your Honor, I would like to withdraw my plea and plead not guilty.

"The Court: Withdraw your plea of not guilty and plead guilty?

"The Defendant: No, sir, my guilty plea, sir, and plead not guilty.

"Mr. Brooks: If the Court please, I make no objection to that. I would like a bench warrant against his brother and his sister-in-law, against whom I got soft and turned loose. If he wants to play ball the hard way I can do it too. I want the case transferred to Elkins, and I will so move.

"The Clerk: Mr. Brooks, there is no case against the brother and sister-in-law.

"Mr. Brooks: I will put one on them.

"The Court: We will permit you to withdraw the plea of guilty and enter a plea of not guilty. I will direct a warrant for your brother and sister-in-law, and I will transfer the case to Elkins where we begin next week, and we will accommodate you with a trial, young man.

"The Defendant: Yes, sir.

"Mr. McDonnell: If the Court please, I have a communication from Washington County, Pennsylvania, addressed to me as Probation Officer, dated October 16, 1946 'I understand that James E. Lowrey is charged with stealing an automobile and is now lodged in the Ohio County Jail in Wheeling, West Virginia. Mr. Lowrey is on parole here in Washington County in No. 193, August Term, 1946, charges, larceny of motor vehicle. Please accept this letter as a detainer against James E. Lowrey.' I have notified United States Marshal Nichols and given him a copy of the letter.

"The Court: All right. This young man seems to want a trial. We will just give you a trial here and then we will send you over to Ohio to be tried and let them work out on you. You are going to get just what you asked for now, and we will give it to you to the end."

[3] The following took place at the November 19, 1946, hearing at Elkins,

"Mr. Brooks: This is the young man who, in Wheeling, asked permission to

withdraw his plea, which the Court permitted him to do, and it stands before the Court on a plea of not guilty. He has not as yet had any counsel. I asked Mr. Crawford to come over and I have briefly acquainted Mr. Crawford with the facts, and, if he wants counsel, ask the Court to appoint counsel.

"The Court: Lowrey, do you have any counsel?

"Mr. Lowrey: No, sir.

"The Court: I will ask Mr. Donald K. Crawford to talk with you. You gave Mr. Crawford the history of this case, did you?

"Mr. Brooks: Yes, Your Honor.

"Mr. Crawford: Your Honor, could I take him in the library or someplace where I could discuss this case with him?

"The Court: Yes.

"Mr. Brooks: Your Honor please, I will state that, in accordance with our practice, if Mr. Crawford wishes to consult with the Agent about this case or to see our file, we will be very happy to show it to him?

"Mr. Crawford: Thank you, sir.

"Thereupon, Mr. Crawford and the defendant, in company with a deputy marshal, retired from the court room, and, after a time, Mr. Brooks, Assistant United States Attorney, retired to confer with them; and after a while all returned to the court room and the following proceedings were had:

"Mr. Crawford: May it please the court, in the case I have just been appointed on, I have had a long conversation with the accused. I have also talked it over and had the accused talk with the Assistant District Attorney, Mr. Brooks. The matters heretofore had in this court have been gone over with him, the transcript read to him—

"The Court: You mean the Wheeling procedure?

"Mr. Crawford: The Wheeling procedure, yes, Your Honor. The information as it now stands has been read and explained to him, with the further possibility that there may be another one for another act which has been committed. The accused says that he is mentally sick.

"The Court: I think I would be too if I were on probation from Pennsylva-

requested a psychiatric examination. The Court thereupon carefully and somewhat at length interrogated the petitioner,[4] was fully satisfied and found as a fact that petitioner was sane. The Court accordingly refused to direct the psychiatric examination.

■ A careful consideration of this question both from an examination of the record and observation of the petitioner on the witness stand satisfies this Court that petitioner would not have avoided trial by such examination. Nor is this question properly before this Court. This is a factual issue which has been determined against petitioner by the Court having jurisdiction of the offense.[5]

■ While he voluntarily admitted his guilt and a trial would not have been more than a gamble at great odds, nevertheless the question in habeas corpus is not the guilt or innocence of a defendant,[6] but whether he was in fact coerced into the plea of "guilty" by statements which were made by court officials.[7] The fact that he was represented by counsel is not a bar to a consideration of this question in habeas corpus.[8]

■ The petitioner throughout the proceedings in the trial court voluntarily admitted his guilt.[9] His first change of plea from "guilty" to "not guilty" occurred after he had taken the full blame and after the proceedings against his brother Thomas

---

nia and had these two charges against me."

[4] The record shows that petitioner answered all questions lucidly and with complete recollection of all facts and dates and such examination as shown in the record completely negatives any basis for an allegation of insanity.

[5] McMahan v. Hunter, 10 Cir., 1945, 150 F.2d 498. Cf. Robinson v. Johnston, D.C.Cal.,1943, 50 F.Supp. 774, where the trial court failed to pass on such an issue.

[6] Harlan v. McGourin, 218 U.S. 422, 31 S.Ct. 44, 54 L.Ed. 1101; In re Gregory, 219 U.S. 210, 31 S.Ct. 143, 55 L.Ed. 184; Veach v. Smith, D.C., 42 F.Supp. 161; Shouse v. Hiatt, D.C.Pa.1943, 50 F.Supp. 1022; O'Grady v. Hiatt, D.C. 1943, 52 F.Supp. 213, affirmed 142 F. 2d 558; Erwin v. Hiatt, D.C.Pa.1944, 53 F.Supp. 816; Hauck v. Hiatt, 3 Cir., 1944, 141 F.2d 812; Vigoretti v. Hill, D.C., 16 F.Supp. 41; Id., 18 F.Supp. 337, affirmed, 3 Cir., 107 F.2d 1023; United States ex rel. Unwanawich v. Hill, D.C.Pa.1940, 31 F.Supp. 27.

[7] Waley v. Johnston, 316 U.S. 101, 103, 62 S.Ct. 964, 86 L.Ed. 1302; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859.

[8] Waley v. Johnston, supra.

[9] At the October 15, 1946, hearing, in addition to statements in Note 1, supra, he was asked:

"The Court: This is an information charging that on or about the 29th of September, 1946, you transported a stolen motor vehicle, to-wit, a 1940 Plymouth Sedan, Motor Number 9277116, the property of George C. Bronzie, from Greensburg, Pennsylvania, to Wheeling, West Virginia, knowing it was stolen. James, are you guilty or not guilty?

"James Lowrey: Guilty, sir."

And at the Elkins (November 19, 1946) hearing his counsel stated: "He says that he knows he is guilty of stealing the automobile."

And petitioner himself stated:

"The Court: Then you came up, when I called you up and asked if you had anything to say why the sentence of the court should not be pronounced, and you said you wanted permission to withdraw your plea of guilty and file a plea of not guilty, is that right?

"The Defendant: Yes, sir.

"The Court: And the Court permitted you to file the plea of not guilty, did I not?

"The Defendant: Yes, sir.

"The Court: And transferred the case to Elkins. Now I have appointed Mr. Crawford, and Mr. Crawford spent an hour and a half with you. Now I want to know what your plea is—guilty or not guilty. Did you steal this car as charged here, on or about the 29th day of September, 1946, you transported a stolen motor vehicle, to-wit, a 1940 Plymouth Sedan, Motor No. P–9277116, the property of George C. Bronzie, from Greensburg, Pennsylvania, to Wheeling, West Virginia. Are you guilty or not guilty?

"The Defendant: I don't know, sir.

"The Court: Did you take that car and bring it from Pennsylvania over into Wheeling, West Virginia?

"The Defendant: Yes, sir, I took the car.

"The Court: What?

"The Defendant: I brought the car, yes, sir.

"The Court: You brought it from Pennsylvania to Wheeling, and you were caught with it there, weren't you?

had been nol prossed. There is no doubt that his background is bad and that by his actions he played fast and loose with the court, justifying some irritation on the part of both prosecuting officials and the court. This unfortunately occasioned certain remarks[10] which I am forced to conclude had a direct bearing on his final plea.[11]

 In view of this decision the proceedings against this petitioner are still pending in the Northern District of West Virginia and it appears that a trial may still be had. In the light of the circumstances as heretofore pointed out, it is not the intention of this Court that he should escape any just conviction and punishment. Therefore, in disposing of this cause "as law and justice require," [12] the trial district will be given an opportunity to assume jurisdiction for trial, the order entered herein to be without prejudice to such further proceedings.[13]

It is therefore ordered and decreed that James Edgar Lowrey be discharged from his present imprisonment in the United States Penitentiary, Lewisburg, Pennsylvania, provided, however, that William H. Hiatt, Warden of the United States Penitentiary, Lewisburg, Pennsylvania, shall notify the United States Attorney for the Northern District of West Virginia of the day and hour when he will discharge the said James Edgar Lowrey from imprisonment and that such notice be given at least twelve days before the release of the prisoner.

The Clerk of this Court is directed to mail certified copies of this order to the United States District Judge and the United States Attorney for the Northern District of West Virginia.

"The Defendant: No, sir, I wasn't caught with the car.
"The Court: How did they catch you, then?
"The Defendant: I was about a mile away from the car when they caught me.
"The Court: But you do admit taking the car in Pennsylvania and bringing it over to West Virginia?
"The Defendant: Yes, sir.
"The Court: Did you know that car was stolen, or did you steal it yourself?
"The Defendant: Yes, sir, I knew it was stolen.
"The Court: You did? That is a plea of guilty. You have admitted everything charged in the information."
10 See Notes 2 and 3, supra. There were also other remarks by the Assistant United States Attorney such as: "This boy has not entered his plea yet, but I think it is proper before the Court to point out he has had a guardhouse record in the Army." "If the Court saw fit to inquire of him, or anything like that, you might get something on which to base your judgment, for it is my opinion he has been in courts before and knows what he is up against and is grabbing at straws."
11 As appearing in Note 6, supra, defendant even after his consultation with counsel in reply to the question, "Are you guilty or not guilty?" replied: "I don't know, sir."
12 28 U.S.C.A. § 461.
13 In re Medley, 1890, 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835; United States ex rel. Nortner v. Hiatt, D.C.Pa. 1940, 33 F.Supp. 545; Biddle v. Thiele, 8 Cir., 1926, 11 F.2d 235.; Honaker v. Cox, D.C.Mo.1943, 51 F.Supp. 829.